**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 351,<br><br>PETITIONER,<br><br>v.<br><br>BULLET ELECTRIC, INC.,<br><br>RESPONDENT. | Civil No. 26-1454-RMB-EAH<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**:

**THIS MATTER** comes before the Court upon a Motion to Confirm filed by Petitioner International Brotherhood of Electrical Workers, Local Union No. 351 ("Petitioner"). [Docket No. 2 ("Mot. to Confirm").] Having considered the parties' submissions, the Court resolves the Motion without oral argument. FED. R. CIV. P. 78(b); D.N.J. LOC. CIV. R. 78.1(b). For the reasons that follow, the Motion to Confirm is **GRANTED**.

## I. BACKGROUND

The following facts are undisputed. Petitioner is a New Jersey-based labor organization within the meaning of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 152(5). [Docket No. 1 ¶ 2 ("Pet.").] In August 2023, Petitioner and Respondent Bullet Electric, Inc. ("Respondent"), a corporation principally based in

New Jersey, executed Letters of Assent binding themselves to the terms of a Collective Bargaining Agreement ("CBA"). [*Id.* ¶¶ 3, 5 (citing Exs. A–B).] According to the CBA, the parties' representatives initially address between themselves "[a]ll grievances or questions in dispute." [*Id.*, Ex. A § 1.6.] If the representatives "are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee [("LMC")]." [*Id.*]

In October 2025, Petitioner lodged a grievance with the LMC, alleging that Respondent violated the CBA, "including utilizing labor outside of the Union's referral system, not paying appropriate wages, and not remitting fringe benefit contributions." [*Id.* ¶ 9 (citing Ex. C).] The LMC notified Respondent of the grievance and the violations levied against it, and set the matter for a hearing. [*Id.*, Ex. D.]

At the November 3, 2025, hearing, representatives for both parties appeared in-person and presented evidence and testimony. [*Id.* ¶ 12.] Petitioner specifically presented a requested award of $4,226,831.88, "setting forth the estimated lost wage hours and dollar value of unremitted fringe benefit contributions [allegedly] owed by" Respondent. [*Id.* ¶ 13 (citing Ex. E)]; *see also* [*id.*, Ex. F.] Following review of the evidence, the LMC ruled that:

> [Respondent] will undergo a tier 2 audit before any final decision is rendered. The purpose of the audit is to clarify [Petitioner's] request of $4,226,831.88 of unreported union man-hours within the jurisdiction of [Petitioner] as submitted in exhibit 9. All audit fees will be paid in full by [Respondent]. The audit will cover years 2023, 2024 and 2025 to date and shall be completed no later than December 31st, 2025. Failure to comply with this decision will result in [Respondent] remitting to [Petitioner] the full amount as submitted in exhibit 9 no later than January 1st, 2026.

> Once completed, the [LMC] will reconvene to review the audit results and will notify the Chairman and Secretary of the outcome. A final decision will then be issued to [Respondent].
>
> [Respondent] is reminded to keep all documentation and record files pertaining to the year's subject for auditing and present all pertinent information to the auditor as requested.

[*Id.*, Ex. F, at 3.] Respondent received the LMC's written decision the next day, November 4, 2025. [*Id.*, Ex. G.]

On February 13, 2026, Petitioner filed the Petition in this Court seeking confirmation of the Award, contending that the audit was not completed by the December 2025 deadline. [*Id.* ¶ 16.] Petitioner simultaneously filed the nearly identical Motion to Confirm. Respondent parried, objecting to confirmation on the grounds that the Award is not final, and that the complete arbitration rule thus bars judicial review and calls for dismissal. [Docket No. 7 ("Resp't's Merits Br.").] Petitioner has since replied, [Docket No. 13 ("Pet'r's Merits Br.")], and Respondent, in turn, has sought leave to file a sur-reply, [Docket Nos. 15 ("Resp't's Mot. for Leave"); 15-1 ("Resp't's Br. in Supp. of Leave"); 15-2 ("Resp't's Proposed Sur-reply")]. Petitioner opposes that request. [Docket No. 17 ("Pet'r's Opp. Br. to Leave").]

## II. LEGAL STANDARD

The first order of business is to determine the applicable framework—the Federal Arbitration Act ("FAA") or LMRA—under which the Court shall review

Petitioner's confirmation request. Neither party addresses this threshold issue. *See* [Resp't's Merits Br.; Pet'r's Merits Br.] Alas, the Court strikes out on its own.

**A. Petitioner Seeks to Confirm the Award Under § 9 of the FAA**

To confirm an arbitration award, Petitioner may institute a typical civil action under § 301 of the LMRA, proceed by motion under § 9 of the FAA, or carry on under both statutes. *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 312 (3d Cir. 2021) (collecting circuit cases); *see also Sheet Metal Workers Int'l Ass'n Loc. Union No. 25 v. Jansons Assocs., Inc.*, No. 24-2819, 2025 WL 2142669, at *1 (3d Cir. July 29, 2025) (citation omitted). Their shared procedural availability aside, "LMRA [§] 301 actions and FAA motions produce distinct types of proceedings, prescribe different legal standards, and provide separate limitations periods." *PG Publ'g*, 19 F.4th at 312.

"Unlike civil actions under the LMRA, which are formal civil proceedings to which the Federal Rules of Civil Procedure are fully applicable, FAA [§] 9 motions to confirm an arbitration award are addressed through summary proceedings, which are shorn of certain formalities such as pleadings." *Id.* at 313 (first citation omitted) (citing *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 254 (3d Cir. 2020)). The Third Circuit has thus "stressed that the Federal Rules of Civil Procedure governing pleadings, including 'the pleading standards set forth in Rule 12 ... are inapplicable to FAA motions.'" *Jiangsu Beier Decoration Materials Co. v. Angle World LLC*, 52 F.4th 554, 560 (3d Cir. 2022) (quoting *id.*); *see also CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 243 & n.5 (3d Cir. 2021).

For a court to determine whether a party invoked the FAA or LMRA, it must "'look to both the substance of the filing and [the] manner of litigating th[e] dispute,' including whether the party filed a 'motion' or a 'request,' rather than 'a formal lawsuit or action.'" *Jansons Assocs.*, 2025 WL 2142669, at *1 (first quoting *PG Publ'g*, 19 F.4th at 319; and then quoting *Teamsters Loc. 177*, 966 F.3d at 254). Said differently, "courts consider how the matter was filed and how the parties proceeded." *Cnty. Concrete Corp. v. Int'l Bhd. of Teamsters Loc. 863*, No. 26-660, 2026 WL 2823600, at *3 (D.N.J. Sept. 21, 2026).

Preliminarily, the fact that Petitioner initiated this matter with the Petition "does not automatically convert the filing into a pleading." *Id.* (citing *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 308 (3d Cir. 2006) ("The title of 'petition' certainly does not vitiate the substance of the application.")). Indeed, Petitioner specifically "moves before this Court for an Order pursuant to the [FAA]." [Pet. ¶ 1.] Nowhere does the Petition seek relief pursuant to § 301 of the LMRA. *See* [*id.*] Furthermore, the Petition does not enumerate "Counts" customary with civil actions, *see* [*id.*], and Petitioner's Civil Cover Sheet cites the FAA as the filing statute, [Docket No. 1-3].

Petitioner also filed the near-identical (and thus FAA-based) Motion to Confirm, a proposed order, and a statement that no brief is necessary "in accordance with motions practice as required under the local rules." *Cnty. Concrete*, 2026 WL 2823600, at *3 (citing *IFC Interconsult*, 438 F.3d at 308); *compare* [Mot. to Confirm],

*with* [Pet.]; *see* [Mot. to Confirm 3–4 (citing D.N.J. LOC. CIV. R. 7.1(d)(4) for unnecessity of brief), 5–6 (proposed order).] Respondent, too, "was clearly on notice that it was litigating a motion" under the FAA. *Jansons Assocs.*, 2025 WL 2142669, at *1. In opening its legal discussion, Respondent acknowledges that Petitioner "seeks to confirm the [Award] pursuant to the [FAA]." [Resp't's Merits Br. 5.] And, had Respondent construed either the Petition or Motion to Confirm as a pleading, "it should have preserved its rights by seeking additional time to move, answer, or otherwise respond pursuant to FED. R. CIV. P. 12(a). It did not." *IFC Interconsult*, 438 F.3d at 308.

In the Court's view, Petitioner seeks to confirm the Award by way of an FAA § 9 motion. *Compare, e.g.*, *PG Publ'g, Inc.*, 19 F.4th at 319 (finding that LMRA controlled where the filing "was labeled and styled as a complaint," "raised five 'Counts,'" and "was litigated … as an ordinary civil action"), *with IFC Interconsult*, 438 F.3d at 307–08 (finding that FAA controlled where petition "move[d] the court for an order," was "accompanied by a brief, a proposed order, and an appropriate affidavit" in conformity with motions practice under the governing local rules, and was litigated in the manner of a motion). The Court proceeds accordingly.[1]

[1] In its brief, Petitioner contradictorily invokes the LMRA as its procedural vehicle. *See* [Pet'r's Merits Br. 6–7.] What is most likely inattentive briefing does not unsettle the "substance of" the Petition and Motion to Confirm and the "manner of litigating" pursued by the parties detailed above. *Jansons Assocs.*, 2025 WL 2142669, at *1. Regardless, the "formal distinction" between the FAA and LMRA "may often be of little significance." *PG Publ'g, Inc.*, 19 F.4th at 314. "It may well be the case," as it is here, "that many LMRA [§] 301 actions … can be decided as a matter of law on the pleadings." *Id.* (citation omitted); *see also Cnty. Concrete*, 2026 WL 2823600, at *3

**B. Summary Proceedings Under § 9 of the FAA**

As noted, the Court shall resolve the Motion to Confirm in a summary proceeding that does not require the Court "to carry on a formal judicial proceeding." *Angle World*, 52 F.4th at 560 (quoting *CPR Mgmt.*, 19 F.4th at 244); *see also Laundry, Distrib. & Food Serv. Joint Bd., Workers United v. Wacoal Am., Inc.*, No. 25-11806, 2026 WL 622383, at *4 (D.N.J. Mar. 5, 2026) (citation omitted). Summary proceedings are "not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *PG Publ'g*, 19 F.4th at 314 (quoting *Teamsters Loc. 177*, 966 F.3d at 252). "The court may review the documents presented by the parties and often 'can, within its discretion, decide an FAA motion without conducting a full hearing or taking additional evidence.'" *Angle World*, 52 F.4th at 560 (quoting *id.*).

This paradigm is not one size fits all; in some cases, "further proceedings may be necessary to resolve a material factual dispute." *Id.* (citing *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 289–90 (3d Cir. 2003)). Taken together, the Court "must determine the merits of a confirmation petition on the record before

(quotation mark and citations omitted) (reasoning that FAA-LMRA distinction is "of no moment" because "the parties are seeking judgment as a matter of law"). As discussed in more depth below, the question of the Award's finality is one of law. *See infra* § IV.A. In a similar vein, the Court occasionally cites to LMRA cases below because "courts have noted the general similarity in the standard of review and guiding legal principles under the LMRA and the FAA." *HET-JV v. Weston Sols., Inc.*, No. 13-100, 2013 WL 2411698, at *4 (E.D. Pa. June 4, 2013) (collecting cases).

it, and its review is not necessarily limited to factual allegations in the petition itself." *Id.*

However summary the proceeding, there is a "strong presumption … in favor of enforcing arbitration awards" under the FAA. *France v. Bernstein*, 43 F.4th 367, 377 (3d Cir. 2022) (quoting *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016)); *see also Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). With these principles in mind, the Court turns to the parties' argument, after making a jurisdictional pitstop.

## III. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 301 of the LMRA. "A federal court may entertain an action brought under the FAA only if the action has an 'independent jurisdictional basis.'" *Badgerow v. Walters*, 596 U.S. 1, 8 (2022) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). Section 301 of the LMRA provides that needed "jurisdictional grant." *PG Publ'g*, 19 F.4th at 318 (citing 29 U.S.C. § 185(a) and collecting cases). The Petition properly asserts this statutory tag team. [Pet. ¶ 4.] As for Petitioner's reference to the LMRA, it "merely cited § 301 for the purpose of establishing subject matter jurisdiction and went on to invoke the FAA as the provision under which th[is] … Court should confirm the [A]ward." *Jansons Assocs.*, 2025 WL 2142669, at *2; *see supra* § II.A.

## IV. DISCUSSION

Resolution of this matter depends on whether the Award is final, and therefore enforceable by this Court. To Respondent, the complete arbitration rule prohibits confirmation of the Award because it is interlocutory, not final. *See* [Resp't's Merits Br. § III.] Petitioner disagrees, averring that Respondent's finality argument is waived because it was not asserted in a timely motion to vacate, modify, or correct, and that the Award is otherwise final on its face. *See* [Pet'r's Merits Br. § III.]

Because finality is necessary to trigger the statutory period within which Respondent could have brought a motion to vacate, modify, or correct under the FAA, the Court addresses the complete arbitration rule first. *See, e.g.*, *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio, and Mach. Workers of Am., Local 610*, 900 F.2d 608, 610–12 (3d Cir. 1990); *Tremcorp Holdings, Inc. v. Harris*, 67 V.I. 601, 605 (2017) (quotation marks omitted) ("To assess whether an arbitration award is final for purposes of judicial review so as to trigger the three-month limitations period under the FAA, federal courts apply the complete arbitration rule.") (collecting circuit cases).

### A. The Award is Final and the Complete Arbitration Rule Does Not Prevent Judicial Review

The parties agree that finality of the Award is a precondition to its confirmation. *See* [Resp't's Merits Br. § III; Pet'r's Merits Br. § III]; *see also Teamsters Loc. 177*, 966 F.3d at 252 (emphasis added) (citation omitted) (confirmation of an award "merely makes what is already a *final* arbitration award a judgment of the court."). For decades, the Third Circuit has adhered to the complete arbitration rule to safeguard

this requirement. "Under that rule, judicial review of an arbitration is precluded until it is final." *Prospect Cap. Mgmt. L.P. v. Stratera Holdings, LLC*, 185 F.4th 429, 437 (3d Cir. 2026); *see PG Publ'g*, 19 F.4th at 321 n.14; *Union Switch*, 900 F.2d at 610–12; *Phillips 66, Bayway Refinery v. Int'l Bhd. of Teamsters, Loc. 877*, No. 13-4910, 2014 WL 320384, at *3 (D.N.J. Jan. 29, 2014); *see also Wheeling Power Co. - Mitchell Plant v. Loc. 492, Util. Workers Union of Am., AFL-CIO*, 145 F.4th 468, 471 (4th Cir. 2025); *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 719 (6th Cir. 2014); *Wootten v. Fisher Invs., Inc.*, 688 F.3d 487, 491 (8th Cir. 2012); *McKinney Restoration, Co. v. Illinois Dist. Council No. 1 of Int'l Union of Bricklayers & Allied Craftworkers*, 392 F.3d 867, 871 (7th Cir. 2004); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413–14 (2d Cir. 1980).

The complete arbitration rule doubly "conserves judicial resources and avoids 'fragmented' or 'piecemeal' litigation by waiting until the court is in a position to resolve the entire dispute before ruling on an arbitration award." *Vento v. Crithfield*, No. 2009-174, 2014 WL 12749232, at *6 (D.V.I. Sept. 30, 2014) (first quoting *Union Switch*, 900 F.2d at 611; and then quoting *Public Service Elec. & Gas Co. v. System Council U-2,* 703 F.2d 68, 70 (3d Cir. 1983)). The rule is a "prudential rather than jurisdictional requirement." *Shore Point Distrib. Co. v. Int'l Bhd. of Teamsters Loc. 701*, 756 F. App'x 208, 209 (3d Cir. 2019) (citing *Union Switch*, 900 F.2d at 609); *see also Prospect Cap. Mgmt.*, 185 F.4th at 437 (citing *PG Publ'g*, 19 F.4th at 321 n.14); *but see Bensalem Park Maint., Ltd. v. Metro. Reg'l Council of Carpenters*, No. 11-2233, 2011 WL 2633154, at *5

(E.D. Pa. July 5, 2011) (citing *Union Switch*, 900 F.2d at 611–12) (explaining that prudential-jurisdictional distinction "is of little value" "at th[e] [screening] stage" because "[t]he purpose of this rule is to avoid 'fragmented litigation'").

In *PG Publ'g*, the Third Circuit held that an arbitration award is final "if it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration and it resolves them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." 19 F.4th at 321 (citation modified). In other words, and as relevant here, an award "is not final if 'the arbitrators have decided liability but not the remedy when they are authorized to decide both issues.'" *Prospect Cap. Mgmt.*, 185 F.4th at 437 (quoting *id.* at 322); *see also Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Sheet Metal Workers Loc. 19 v. Gen. Aire Sys.*, No. 24-1696, 2025 WL 778886, at *10 (E.D. Pa. Mar. 11, 2025) (memo.) (citations and quotation mark omitted) ("However, many courts have declined to review a labor arbitrator's decision … until the arbitrator has ruled on both liability and remedies[.]"), *appeal docketed*, No. 25-1552 (3d Cir. Mar. 31, 2025).

Recalling the summary nature of FAA confirmation proceedings, "it makes sense to infer intent from the attributes of the award and arbitration record." *PG Publ'g*, 19 F.4th at 322. There is generally no "need to turn to extrinsic evidence regarding an arbitrator's intent, as 'absent consent of the parties, it is generally improper for an arbitrator to interpret, impeach or explain a final and binding award.'" *Id.* (quoting *Local P-9, United Food & Com. Workers Int'l Union v. George A. Hormel & Co.*, 776 F.2d

1393, 1395 (8th Cir. 1985)). For these reasons, "the finality of an arbitration award is to be determined as a matter of law from the award itself and the written arbitration record." *Id.* at 321.

Respondent argues that the tier 2 audit is not yet complete and the LMC has not reconvened to issue a final award after reviewing the audit results. *See* [Resp't's Merits Br. 1 (Award "expressly contemplates further action—that Respondent … must undergo a tier 2 audit"), 4 ("Instead of allowing the audit to proceed to completion," Petitioner "filed this instant action seeking confirmation of what is plainly an interlocutory [Award].").] Respondent ignores—fatally—a key provision of the Award. True, the Award requires Respondent to "undergo a tier 2 audit before any final decision is rendered." [Pet., Ex. F, at 3.] But the LMC unequivocally stated that the audit "*shall be completed no later than December 31st, 2025*." [*Id.* (emphasis added).] And that the failure to abide by that deadline would "result in [Respondent] remitting to [Petitioner] the full amount" of $4,226,831.88 "no later than January 1st, 2026." [*Id.*] The LMC had only to "reconvene to review the audit results" and render a final award "[o]nce" the audit was "completed." [*Id.*]

By conceding the incompleteness of the audit, the Court agrees with Petitioner that the Award provides a "self-executing remedy … if the audit was not completed by December 31, 2025," [Pet'r's Merits Br. 9], "as a matter of law from the award itself," *PG Publ'g*, 19 F.4th at 321. To be sure, the Award is no model of clarity, at least not explicitly; but Respondent's contention that "[n]either liability nor a remedy has been determined by the LMC" inexplicably ignores the plain text of the Award.

[Resp't's Merits Br. 6.] And "[t]he complete arbitration rule does not, however, mean that the mere *possibility* that an arbitrator may need to take further action renders an award non-final." *Bensalem Park Maint., Ltd. v. Metro. Reg'l Council of Carpenters*, No. 11-2233, 2011 WL 2633154, at *5 (E.D. Pa. July 5, 2011) (memo.) (emphasis added) (quoting *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinist and Aerospace Workers*, 802 F.2d 247, 250 (7th Cir. 1986)).

Nor does the Court find this case analogous to *Sys. Council U-2* or *Union Switch*, as argued by Respondent. [Resp't's Merits Br. 5–6.] In each of those labor-dispute cases, "the arbitrators issued an interim order as to liability then instructed the parties to negotiate a remedy. Before negotiations could take place, the parties in both cases filed applications in the district court to either vacate or enforce the arbitrator's award." *Vento*, 2014 WL 12749232, at *7 (first citing *Union Switch*, 900 F.2d at 609; and then citing *Sys. Council U-2*, 703 F.2d at 69). The Third Circuit, citing the complete arbitration rule, expressed clear disapproval of the district courts adjudicating those applications. *Sys. Council U-2*, 703 F.2d at 69; *Union Switch*, 900 F.2d at 609–11. The upshot of *Sys. Council U-2* and *Union Switch* is that federal district courts should not entertain motions to vacate or confirm arbitration awards pending bifurcated or postponed determinations of a remedy.

Here, by contrast, "[t]here is no matter within the [A]ward that depended on further deliberation from the panel or the parties." *Brown v. Simons*, No. 19-5074, 2023 WL 2390662, at *5 (E.D. Pa. Mar. 7, 2023) (memo.). Because the audit was not completed by the December 31, 2025, deadline, there are no unresolved issues of

liability or damages with which this Court could interfere by confirming the Award. In this respect, "the [A]ward [speaks for] itself." *PG Publ'g*, 19 F.4th at 321. And Petitioner is not exploiting a "'time out[]' as an opportunity to rush to court, either to preserve what [it] ha[d] just won, or … to forestall a process that is not turning out as [it] might have wished." *Union Switch*, 900 F.2d at 611. The Court thus finds the Award is final and, consequently, enforceable.

**B. Respondent's Motion for Leave to File a Sur-reply is Denied**

This District's Local Civil Rule 7.1(d)(6) states that "[n]o sur-replies are permitted without permission of the Judge to whom the case is assigned." In accordance with this Rule, Respondent seeks leave to file a proposed sur-reply briefing issues of ambiguity and public policy. *See* [Resp't's Mot. for Leave; Resp't's Br. in Supp. of Leave; Resp't's Proposed Sur-reply.] Permission for leave to file a sur-reply "is a matter 'committed to the District Court's sound discretion.'" *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 137 (3d Cir. 2014) (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 276 (3d Cir. 2001)).

Petitioner allegedly raised for the first time in its brief the argument that its auditor, as opposed to Respondent, did not complete the audit by the December 31, 2025, deadline. [Resp't's Br. in Supp. of Leave 2 (emphasis in original) (Award is not final "because the audit was not *completed by MSPC* (the auditors hired by [Petitioner].").] Petitioner retorts that it in fact never raised this argument in its brief,

and that Respondent's request is a crafty maneuver to chomp a second time at the apple. *See* [Pet'r's Opp. Br. to Leave.]

The Court agrees with Petitioner. Respondent unpersuasively weaves together two sentences from Petitioner's brief to concoct newly raised issues of ambiguity and public policy.[2] *See* [Resp't's Proposed Sur-reply.] In its brief, Petitioner quoted the Award's requirement that "[t]he audit … shall be completed no later than December 31st, 2025," followed up with, "Therefore, the auditor needed time to review the documents before the audit could be completed by December 31, 2025." [Pet'r's Merits Br. 5 n.2. (alteration in original) (citation omitted).] In so doing, Petitioner simply countered Respondent's claim that it had "complied with the auditor's request to submit all documents by December 31, 2025." [Resp't's Merits Br. 7 n.4.] Petitioner did not alternatively argue under what circumstances the audit became complete so as to finalize the Award; it simply responded to Respondent's original position, which ignored the Award's deadline, that the audit was not completed.

The single issue disputed by the parties in the initial briefing is whether the outstanding audit finalized the Award. *See, e.g.*, [Resp't's Merits Br. 1 (challenging confirmation of the Award "because it suffers from a fatal flaw: it is not a final arbitration award").] The Court answered that question in the affirmative above. *See supra* § IV.A. Respondent chose to selectively quote the Award, ignore the December

---

[2] Ironically, Respondent's supporting brief does not actually cite to the purportedly new argument in Petitioner's papers. [Resp't's Br. in Supp. of Leave 2.] The Court must instead review the proposed sur-reply to triangulate the material. [Resp't's Proposed Sur-reply 1.]

31, 2025, deadline, and stake its opposition on the uncontested fact that the audit is not completed. *See* [Resp't's Merits Br.] If anything, it was Respondent who had the opportunity to set forth the alternative arguments it accuses Petitioner of raising first, but declined to do so. *See* [*id.* at 7 n.4 (Respondent "complied with the auditor's request to submit all documents by December 31, 2025, and responded to the auditor's repeated requests for supplemental documents outside the initial Audit [r]equest.").] It is axiomatic that a sur-reply "is meant only to address new issues raised by the opposing party for the first time in a reply brief. It is not meant to be used as a vehicle for providing the Court with arguments that could have been included in the earlier opposition brief." *Healthquest of Cent. Jersey, LLC v. Antares AUL Syndicate 1274*, No. 18-12375, 2020 WL 4431770, at *6 (D.N.J. July 31, 2020) (citation omitted).

For these reasons, the Court **DENIES** Respondent's request to file the proposed sur-reply. *See, e.g.*, *Coulter v. I.Q. Data*, No. 24-6794, 2026 WL 280460, at *3 n.2 (D.N.J. Feb. 3, 2026) (denying application for leave to file sur-reply because, in part, defendant's reply "d[id] not raise any new issues that [were] not addressed (or were addressable) in" plaintiff's prior briefing).

### C. Even if the Court Considered Respondent's Proposed Sur-reply, the Court Would Still Confirm the Award

Even if permitted, Respondent's proposed sur-reply would not have changed the outcome of this proceeding. In its proposed brief, Respondent argues against confirmation because the Award "is ambiguous" and "plainly violate[s] public policy." [Resp't's Proposed Sur-reply 2–3.] This is purportedly so because the Award

"calls for the Court to guess [its] meaning of what satisfies completion of the audit," *i.e.*, Respondent's submission of all necessary documents to complete the audit by December 31, 2025, or Petitioner's auditor having to finalize the audit by that deadline. [*Id.*] Respondent seeks a remand to the LMC for clarification of the Award's supposed ambiguity. [*Id.* at 3.] As to public policy, Respondent contends that the former interpretation vests arbitrary authority in Petitioner to determine when the audit is complete and therefore contravenes public policy. [*Id.*] Several things befall Respondent.

First, Respondent did not adequately brief his proposed sur-rely arguments. Respondent's ambiguity argument is not much more than a string cite demonstrating the existence of arbitral ambiguity as a ground for remand. *See* [*id.* at 2–3.] The same paucity afflicts Respondent's two-sentence public-policy stance. All Respondent provides is one citation supporting the public policy exception's actuality and then half-heartedly argues against confirmation if the auditor "controls what constitutes audit completion." [*Id.* at 2.] "It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work-framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts." *Hyer v. Colvin*, No. 15-297, 2016 WL 5719683, at *11 (D. Del. Sept. 29, 2016) (citation omitted) ("argument fail[ed]" for deficient briefing); *see United States v. Fayton*, 704 F. Supp. 3d 449, 453 (S.D.N.Y. 2023) ("[A] party may be deemed to have waived an argument through inadequate briefing, such as a perfunctory one-sentence argument."); *TGIP, Inc. v. AT & T Corp.*, 512 F. Supp. 2d 696, 712 (E.D. Tex. 2007)

("Courts have consistently held that inadequate briefing results in a waiver of a party's arguments.") (collecting circuit cases). Respondent's inadequate briefing alone would not have prevented confirmation of the Award.

Second, the issue of ambiguity is an exception to the doctrine of *functus officio*. "*Functus officio* (Latin for 'a task performed') is a shorthand term for a common-law doctrine barring an arbitrator from revisiting the merits of an award once it has issued." *Off. & Pro. Emps. Int'l Union, Loc. No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 331 (3d Cir. 1999) (citing *Teamsters Local 312 v. Matlack, Inc.,* 118 F.3d 985, 991 (3d Cir. 1997)). The doctrine functions to preclude "the potential evil of outside communication and unilateral influence which might affect a new conclusion." *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991) (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967)). Arbitration particularly is subject to this "heightened risk because 'the continuity of judicial office and the tradition which surrounds judicial conduct is lacking in the isolated activity of an arbitrator.'" *Prospect Cap. Mgmt.*, 185 F.4th at 435 (quoting *id.*).

To combat this, ambiguity is a recognized exception to *functus officio*. *Verizon Penn., LLC v. Commc'ns Workers of Am., AFL-CIO, Loc. 13000*, 13 F.4th 300, 307 (3d Cir. 2021) (quoting *Brownsville Gen. Hosp.*, 186 F.3d at 331). But *functus officio* "applies only to an arbitrator's 'final award.'" *Prospect Cap. Mgmt.*, 185 F.4th at 435 (quoting *id.*); *see also La Vale Plaza*, 378 F.2d at 572. In the proposed sur-reply, Respondent does not

invoke the *functus officio* doctrine nor claim that the Award is final. *See* [Resp't's Proposed Sur-reply.] This, too, would have called for confirmation of the Award.

Third, federal courts only disturb arbitration awards over well-defined public policies, not generalized concerns. Awards rendered pursuant to collective bargaining agreements can be vacated when such awards violate public policy. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983). But "the public policy must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Transp. Union Loc. 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 381 (3d Cir. 1995) (internal quotation marks omitted) (quoting *id.* at 766); *see Comcast of N.J. LLC v. IBEW Loc. Union No. 827*, No. 22-3239, 2024 WL 340692, at *3 (3d Cir. Jan. 30, 2024).

Putting aside the briefing deficiencies, Respondent has not identified a specific public policy, but rather a vague notion of equity. *See* [Resp't's Proposed Sur-reply 3 ("confirming an award that requires [Respondent] to pay over $4.2 million for an audit over which it had no control would plainly violate public policy").] This one-sentence argument would not have satisfied the "slim" public policy exception and prevented confirmation of the Award. *Serv. Emps. Int'l Union Loc. 36, AFL-CIO v. City Cleaning Co.*, 982 F.2d 89, 92 (3d Cir. 1992) ("limit[ing]" exception "when the arbitration decision and award create an explicit conflict with an explicit public policy").

Fourth, the Court would have rejected Respondent's ambiguity theory, even if Respondent had properly argued for the Award's finality. The Court would not have had "to guess the [Award's] meaning of what satisfies completion of the audit."

[Resp't's Proposed Sur-reply 2.] The Award once more speaks for "itself." *PG Publ'g*, 19 F.4th at 321. The audit "shall be completed no later than December 31st, 2025." [Pet., Ex. F, at 3.] That necessarily entails both that Respondent turned over all necessary documents and the auditor completed the audit by the mandated deadline. The Court would therefore not have had to "ascertain the intention of the arbitrators so that the [A]ward can be enforced." *Off. & Pro. Emps. Int'l Union, Loc. No. 471*, 186 F.3d at 332 (quoting *Colonial Penn*, 943 F.2d at 334).

Respondent does not argue in the proposed sur-reply that it is Petitioner who has not complied with the audit deadline, thereby defeating confirmation. Indeed, Respondent relies on the alleged ambiguity and advises that the Court "need not answer the question of whether the audit was complete" under either alleged interpretation. [Resp't's Proposed Sur-reply 2.] Consequently, the Court would not have remanded the Award for clarification, "a disfavored procedure." *JNESO Dist. Council 1, IUOE v. Saint Michael's Med. Ctr.*, No. 21-13316, 2022 WL 986270, at *3 (D.N.J. Apr. 1, 2022) (citing *Washington-Baltimore Newspaper Guild, Loc. 35 v. Washington Post Co.*, 442 F.2d 1234, 1238 (D.C. Cir. 1971)).

Fifth, Respondent is likely time-barred from raising the ambiguity, public policy, and noncompliance defenses in this motion-to-confirm proceeding because it did not file a timely motion to vacate, modify, or correct under the FAA. *See* [Pet'r's Reply Br. § 3.A.] An aggrieved party who wants to challenge an arbitration award typically must move to vacate, modify, or correct the award under §§ 10 and 11 of the FAA. 9 U.S.C. § 9. Section 12 of the FAA provides a 90-day limitations period for

such motions "after the award is filed or delivered." It is undisputed that Respondent received the Award on November 4, 2025, and consequently had until February 2, 2026, to file a motion to vacate, modify, or correct. [Pet., Ex. G]; *see* [Resp't's Merits Br.; Resp't's Proposed Sur-reply.]

The Third Circuit has held that, "if a defendant has important defenses to an arbitration award, [it] should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding." *City Cleaning*, 982 F.2d 89, 93 (3d Cir. 1992) (quoting *Serv. Emps. Int'l Union, Local No. 36 v. Off. Ctr. Servs., Inc.*, 670 F.2d 404, 412 (3d Cir. 1982)). Because there is no evidence before the Court that Respondent filed an FAA §§ 10 or 11 motion by February 2, 2026, its ambiguity, public policy, and noncompliance arguments are likely waived. *See, e.g.*, *Gen. Aire Sys.*, 2025 WL 778886, at *11 (entertaining complete-arbitration-rule argument, but finding defenses "about the timeliness of the grievances, that the award was not drawn from the essence of the collective bargaining agreement, [and] the appropriateness of the remedy fashioned" waived because defendant did not move to vacate, modify, or correct the award within 90-day limitations period).

For these five distinct reasons, Respondent's proposed sur-reply would not have altered the Court's decision to confirm the Award.

## V. CONCLUSION

Under Section 9 of the FAA, the Court "must" confirm a final arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9; *see Pocono Med. Ctr. v. JNESO Dist. Council 1, Int'l Union*

*of Operating Eng'rs, AFL-CIO*, No. 22-1901, 2023 WL 4686073, at *2 (M.D. Pa. July 21, 2023) (memo. op.) ("Under well-established case law, a final and binding arbitration award which has not been vacated, modified, or corrected must be confirmed.") (collecting circuit cases). Because the Award at issue here is final, and there is no evidence before the Court that the Award has been vacated, modified, or corrected, Petitioner's Motion to Confirm [Docket No. 2] is **GRANTED** and the Award is **CONFIRMED**.

At this time, however, the Court will not enter Petitioner's proposed Judgment. [Mot. to Confirm 7–8.] To start, the principal sum, total sum, rates of interest, and other related fields are left blank. [*Id.* at 2.] Next, Petitioner requests attorney's fees, accountant's fees, costs, and disbursements from Respondent with no reference to the Award, the parties' CBA, or applicable law. [*Id.*] The Court will therefore **ORDER** Petitioner to file, no later than October 14, 2026, a complete proposed Judgment and an explanation as to why Petitioner is entitled to the monies it seeks based on the Award, the parties' CBA, and governing law. Respondent will have until October 28, 2026, to reply to both Petitioner's proposed Judgment and explanation.

**October 2, 2026**
Date

**/s/ Renée Marie Bumb**
Renée Marie Bumb
Chief United States District Judge